UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
JAMES PETTUS,

                         Petitioner,

            -against-                                      **OPINION AND ORDER**
                                                          06 CV 2142 (LB)

SUPERINTENDENT GREENE, Great Meadow
Correctional Facility,

                         Respondent.
----------------------------------------------------------X

**BLOOM, United States Magistrate Judge:**

James Pettus, proceeding pro se, petitions this court for a writ of habeas corpus pursuant

to 28 U.S.C. § 2254. The parties have consented to entry of judgment of this petition by a

Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the following reasons, the petition for a

writ of habeas corpus is denied.

## BACKGROUND

According to the testimony adduced at trial in Supreme Court, Kings County, petitioner

submitted applications for food stamps, Medicaid, and other public assistance benefits on

October 12, 2001, February 28, 2002, and May 3, 2002. In two of the applications, he used false

names and in all of the applications, he used false social security numbers and falsely stated that

he had no income. Petitioner obtained a total of $5,304.50 in benefits based on these

applications. Petitioner was charged under Kings County Indictment Number 6013/02 with

Grand Larceny in the Third Degree (P.L. § 155.35), Grand Larceny in the Fourth Degree (P.L. §

155.30), Welfare Fraud in the Third Degree (P.L. § 158.15), Welfare Fraud in the Fourth Degree

1

(P.L. § 158.10), and three counts of Offering a False Instrument for Filing in the First Degree (P.L. § 175.35).

Petitioner first expressed a desire to proceed pro se and a lack of trust in his assigned attorney on February 18, 2003. Tr. 2/18/03 at 5.[1] On April 10, 2003, petitioner reiterated his desire to proceed pro se, but stated that he would be willing to accept Lawrence Wright as his legal advisor. Tr. 4/10/03 at 15. After learning that petitioner had filed a lawsuit and made a threat against Wright, the court replaced Wright with Richard Grady as petitioner's counsel/legal advisor pending resolution of whether petitioner would represent himself or be represented by counsel. Tr. 4/29/03 at 2.

On April 30, 2003, petitioner stated that he wanted to represent himself, and the court questioned petitioner to determine whether his decision to waive his right to counsel was made knowingly, voluntarily, and intelligently. Tr. 4/30/03 at 13-19. The court explained that petitioner would be giving up his right to "have somebody experienced and well-versed in the law by waiving his right to counsel." Id. at 15. Petitioner responded that he did not want to give up his attorney and that he wanted a legal advisor. Id. The court clarified that "when you elect to go pro se, it is not as though you have co-counsel." Id. The court further explained that if petitioner was representing himself, he would make all of the legal arguments, but that he would be given an opportunity to speak with his legal advisor "during breaks" or "whenever appropriate." Id. The court stated that it would not allow petitioner to ask his legal advisor how to phrase questions or inquire about "what to do at every particular point" of the trial. Id. at 19. Petitioner stated that he understood. Id. Petitioner also stated that one of the reasons he wanted

---

[1] "Tr. __" references the pre-trial transcript on that date.

to represent himself was because he felt he had been "railroaded" in the past and that attorneys who had represented him previously had been in collusion with the District Attorney's Office. Id. at 17. The court explained that the role of the legal advisor was to advise rather than assist the petitioner, stating "he is not going to sit there and whisper in your ear and tell you how to phrase each and every question." Id. at 20. Petitioner stated that he wanted someone who would assist him. Id. The court then reiterated that petitioner could chose either to have counsel appointed to represent him, or that he would represent himself with legal counsel appointed solely to advise him. Id.

The court went on to explain that a legal advisor would not be able to step in and out of the role as counsel to do such things as elicit his testimony, make objections, or otherwise interrupt proceedings to correct petitioner's mistakes. Id. at 22-24. Petitioner said that he understood, but that it sounded "a little spooky." Id. at 23. Petitioner inquired whether he would be allowed to question witnesses if he decided to have an attorney represent him. Id. at 25-26. The court answered that petitioner would not be allowed to do so, nor would he be allowed to speak before the jury unless he testified as a witness. Id. at 27. Petitioner responded, "I want to represent myself. I want to ask questions. No more to be said." Id. The court asked petitioner once more if he wanted to represent himself, to which he replied yes, that he would take his chances. Id. at 27-28.

The court appointed Grady as petitioner's legal advisor and recessed the proceeding to allow petitioner time to speak with Grady. Id. at 28. Following the recess, Grady advised the court that he and petitioner discussed his duties as legal advisor and the potential difficulties petitioner may face representing himself, but that petitioner still chose to waive his right to

3

counsel. Id. at 29. The court then pointed out petitioner's previously disruptive behavior in the courtroom and admonished him that such behavior would not be tolerated. Id. at 29-32. Petitioner would be required to follow the same rules, regulations, and procedures as everyone else. Id. at 32. Petitioner said that he understood. Id. The court then found that petitioner had made a "knowing, voluntary, and intelligent waiver of his rights to counsel," and appointed Grady as his legal advisor. Id. at 36.

Prior to the start of the trial on May 21, 2003, petitioner sent two letters to the court. Tr. at 2.[2] The first letter stated that he was not competent to represent himself and that he needed an advisor; the second letter stated that he had been informed of the difference between a legal advisor and co-counsel, and that he wished to remain pro se. Id.

The court explained that the primary purpose of Grady's presence was to serve as standby counsel to step in should petitioner be unable to continue his own representation for any reason. Id. at 3. Secondarily, the court noted, Grady would be available to advise petitioner before or after daily trial proceedings or during breaks, but that petitioner could not interrupt the trial to confer with him. Id. Petitioner objected and requested that Grady remain at his side throughout the proceedings. Id. The court denied petitioner's request and responded that he had the constitutional right to counsel and the right to proceed pro se, but that he did not have the right to anything in between. Id. at 4.

Grady reiterated petitioner's request that he be allowed to sit beside petitioner throughout the trial so as to be readily available for questions. Id. at 5. The court repeated that Grady's primary role was to serve as standby counsel and emphasized that it would not allow "hybrid"

---

[2] "Tr. at __" references the trial transcript.

4

representation. Id. at 6. Following extended dialogue on this issue, petitioner again confirmed that he intended to proceed pro se. Id. at 23.

Following an inquiry by petitioner shortly thereafter as to whether he would be allowed to request breaks to confer with his legal advisor, the court responded that such interruptions would not be allowed. Id. at 37-38. In response, petitioner stated that he changed his mind and wanted Grady to represent him. Id. The court explained that if he reclaimed his right to counsel, Grady would be in control of and make tactical decisions regarding how to conduct the defense and how to proceed, although, petitioner would still "have certain fundamental rights to make decisions." Id. at 38 - 41. The court informed petitioner that while he would have the opportunity to consult with and provide input to Grady, he was not allowed to "orchestrate" his actions by "whispering to him throughout the trial what questions to ask." Id.

Petitioner expressed concern over his lack of control regarding tactical decisions and blamed a past conviction on poor tactical decisions made by his previous attorney. Id. at 41. He stated that his "ultimate fear" was "putting [Grady] or any attorney in a position where he goes against [the court] or the District Attorney. Id. at 42. The court explained that Grady was a good attorney who would zealously and diligently represent petitioner's interests to the best of his ability within the cannons of ethics. Id. The court then gave petitioner two minutes to make a final decision as to whether or not he wanted to waive his right to counsel. Id. at 43. Following a short break, petitioner reaffirmed his earlier decision to proceed pro se. Id. at 44.

The court allowed petitioner to confer with his legal advisor during the trial so long as the trial was not interrupted. The court allowed three breaks for the petitioner to confer with his legal advisor during jury selection and provided additional time for petitioner and Grady to

5

confer after the prosecution rested and prior to petitioner's summation. Id. at 165, 221, 264, 600-02, 611. Additionally, the court allowed Grady to sit next to petitioner during the testimony of the fingerprint expert and the fraud investigator due to the technical nature of their testimony. Id. at 378. However, when Grady attempted to address the court following a recess during this testimony, the court stopped him and reminded him that he was not acting as assistant counsel and that petitioner should be the one to address the court. Id. at 437. Additionally, the court ordered Grady to return to the front row of the gallery rather than to sit beside petitioner when he failed to heed warnings to limit conversations and other communications with petitioner during jury selection. Id. at 170-171. At sentencing, the court allowed petitioner to confer with Grady several times. S. 3, 5-6, 9, 11-12, 14.[3]

The jury found petitioner guilty of grand larceny in the third degree, welfare fraud in the third degree, offering a false instrument, grand larceny in the fourth degree, and welfare fraud in the fourth degree. The court sentenced petitioner to three and one-half to seven years for grand larceny in the third degree, three and one-half to seven years for welfare fraud in the third degree, two to four years for each of the three counts of offering a false instrument, one year for grand larceny in the fourth degree, and one year for welfare fraud in the fourth degree. All counts were to run concurrently except for the sentences for the three counts of offering a false instrument which were to run consecutive to each other for an aggregate sentence of six to twelve years. Id. at 16-17.

---

[3] "S. at __" references the sentencing transcript.

## PROCEDURAL HISTORY

Petitioner appealed his conviction to the Appellate Division, Second Department, raising the following claims: 1) the trial court violated his rights to counsel and due process when it induced him to withdraw his request for counsel by improperly cautioning him that his participation in his own defense would be severely curtailed if he had counsel, then repeatedly limited his access to his legal advisor; 2) the jury should have been charged that it had to find a common scheme or plan before it could aggregate the amounts stolen pursuant to the three applications to establish the value element of third-degree grand larceny and third-degree welfare fraud; 3) the court could not impose consecutive sentences for the false instrument counts; and 4) the court could not sentence him on the fourth degree grand larceny and welfare fraud counts since those counts were the lesser included counts of the respective third degree counts, and because the jury did not reach a verdict on those counts. Pet'r Appellate Br. at ii-iii.

The Appellate Division affirmed the petitioner's judgment of conviction. People v. Pettus, 803 N.Y.S.2d 186 (2d Dep't. 2005). Leave to appeal to the Court of Appeals was denied February 27, 2006. People v. Pettus, 845 N.E.2d 1287 (2006). Petitioner timely filed the instant pro se petition seeking habeas corpus relief pursuant to 28 U.S.C. § 2254.[4]

## DISCUSSION

### I. Standard of Review

Petitioner's claims are governed by the standards set forth in the Antiterrorism and Effective Death Penalty Act ("AEDPA"). 28 U.S.C. § 2254. For claims that have been

---

[4] On February 7, 2007, petitioner filed an interlocutory appeal with the Second Circuit which divested this Court of jurisdiction. On July 26, 2007, the Second Circuit granted petitioner's motion to withdraw his appeal.

adjudicated on the merits in state court proceedings, a petitioner must show that the state court proceedings:

> (1) Resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) Resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254 (d).

In Williams v. Taylor, the Supreme Court held that a state court decision is "contrary to" clearly established federal law if a state court (1) "arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law," or (2) "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite" to that of the Supreme Court. 529 U.S. 362, 405 (2000). "'Clearly established Federal law' in § 2254(d)(1) 'refers to the holdings, as opposed to the dicta, of this Court's decision as of the time of the relevant state-court decision.'" Id. at 412, (cited in Carey v. Musladin, 127 S. Ct. 649, 653 (2006)). As to the "unreasonable application" clause of the AEDPA, habeas relief is warranted only "if the state court identifies the correct governing legal principle from [Supreme Court] decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 407.

The Supreme Court has ruled that the reasonableness of the application of the law is to be assessed objectively rather than subjectively. Id. at 409-10. In addition, the Court cautioned that "an *unreasonable* application of federal law is different from an *incorrect* application of federal law." Id. at 410 (emphasis in original). Therefore, "a federal habeas court may not issue the writ simply because the court concludes in its independent judgment that the relevant state-court

8

decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411; accord Bell v. Cone, 535 U.S. 685, 694 (2002). The Second Circuit has explained that while "[s]ome increment of correctness beyond error is required ... the increment need not be great; otherwise habeas relief would be limited to state court decisions 'so far off the mark as to suggest judicial incompetence.'" Francis v. Stone, 221 F.3d 100, 111 (2nd Cir. 2000) (quotation omitted).

## II.    Petitioner's Claims

### A.    Right to Counsel Claim.

Petitioner claims that the court violated his "rights to counsel and due process when it induced him to withdraw his request for counsel by improperly cautioning that his participation in his own defense would be severely curtailed, then repeatedly limited his access to the attorney-advisor." Pet'r Appellate Br. at 28. The Appellate Division's denial of this claim was not contrary to or based on an unreasonable application of clearly established Federal law. Therefore, this claim should be denied.

Petitioner argues that the court should have assigned counsel without inquiry when he requested such representation, and that the court's statements at that time inappropriately influenced him to proceed pro se. Id. at 31. The Supreme Court has acknowledged the fundamental nature of the right to counsel, Gideon v. Wainwright, 372 U.S. 335, 344-345 (1963), but it has also recognized that the Sixth Amendment right to counsel implicitly embodies a correlative right for a defendant to represent himself. Faretta v. California, 422 U.S. 806, 814-816 (1975).

9

In Faretta, the Supreme Court explained that a defendant who represents himself relinquishes many of the traditional benefits associated with the right to counsel, and that a defendant must "knowingly and intelligently" forgo those benefits. Faretta, 422 U.S. at 835. Consequently, a court should inform the defendant about the dangers and disadvantages of self-representation, so that it is established on the record that "he knows what he is doing and his choice is made with eyes open." Id. (quoting Adams v. United States ex rel. McCann, 317 U.S. 269, 279 (1942)).

Here, the court warned petitioner of the dangers of proceeding pro se prior to approving his initial waiver of the right to counsel. Tr. 4/29/03 at 13-27. The court properly apprised petitioner of the benefits of counsel and of the limitations that would be placed on petitioner should he elect to accept appointed counsel. The court's explanation of the role of counsel served as an extension of its initial inquiry to ensure that petitioner's decision to waive his right to counsel was informed, knowing, and voluntary. When the court explained to the defendant that he would not be permitted to control every facet of counsel's representation, petitioner unequivocally asserted his desire to proceed pro se. Therefore, the state court's decision to deny petitioner's right to counsel claim was not contrary to or an unreasonable application of Federal law.

Petitioner further alleges that the court violated his constitutional right to participate in his own defense and to communicate freely with his attorney advisor when it improperly "promised to limit his participation in his own defense" should he elect to retain counsel rather than represent himself. Pet'r Appellate Br. at 28, 32. The court's description of the role of appointed counsel and petitioner's right to participate in his own defense did not violate

10

petitioner's constitutional rights. The court gave an accurate description of the attorney's and defendant's respective roles should petitioner elect to be represented by counsel. The court explained that appointed counsel would be in control of and make tactical decisions regarding how to conduct the defense and how to proceed, but that petitioner would still "have certain fundamental rights to make decisions." Tr. at 38-41. The court further informed petitioner that he was not allowed to "orchestrate" counsel's actions by "whispering to him throughout the trial what questions to ask," but that he would have the opportunity to consult with and provide input to counsel. Id. Petitioner's claims that the court's warnings were designed to influence him to "question the wisdom of counsel" are belied by the record. To the contrary, the court tried to alleviate petitioner's stated fears by explaining that counsel's job was to zealously and diligently represent petitioner to the best of counsel's ability within the bounds of ethics. Id. at 42.

Under the Confrontation Clause of the Sixth Amendment, a defendant has a right to be present at all stages of the proceedings where his absence might affect fundamental fairness. Faretta, 422 U.S. at 816 (citing Snyder v. Massachusetts, 291 U.S. 97 (1934)). The defendant's presence would provide him with the opportunity to "give advice or suggestion or even to supersede his lawyers altogether and conduct the trial himself." Id. However, once a trial has begun in which the defendant has elected to proceed with appointed counsel, a defendant's right to represent himself "is sharply curtailed," and the judge must weigh "the prejudice to the legitimate interests of the defendant" against the "potential disruption of proceedings already in progress." United States v. Stevens, 83 F.3d 60, 67 (2d Cir. 1996) (holding that court acted within its discretion when it denied a request by defendant to act as "co-counsel") (quotations omitted).

11

Petitioner also alleges that the court abused its discretion by substantially limiting his contact with his legal advisor and thus denied him the effective assistance of a legal advisor. Pet'r Appellate Br. at 36, 41. There is no constitutional right to effective assistance of standby counsel or a legal advisor. United States v. Schmidt, 105 F.3d 82, 90 (2d Cir. 1997) (citing United States v. Windsor, 981 F.2d 943, 947 (7th Cir. 1992)). Additionally, the duties of standby counsel, should the court elect to appoint such counsel are "considerably more limited than the obligations of retained or appointed counsel." Id. at 90 (citing Tate v. Wood, 963 F.2d 20, 26 (2d Cir. 1992)).

Furthermore, the federal constitution does not guarantee a right to "hybrid representation." McKaskle v. Wiggins, 465 U.S. 168, 183 (1984). A defendant may either exercise his right to be represented by counsel, Gideon, 372 U.S. at 335, or his right to represent himself, Faretta, 422 U.S. at 806, but he has no constitutional right to do both simultaneously, see McKaskle, 465 U.S. at 183. The discretion to grant or deny hybrid representation lies with the trial court. Stevens, 83 F.3d at 67 (citing United States v. Tutino, 883 F.2d 1135, 1141 (2d Cir. 1989).

The court herein properly exercised its discretion in limiting the role of the legal advisor and petitioner's contact with him. Petitioner was able to consult with advisor Grady before and after the daily proceedings as well as during breaks. These limitations were reasonable as the court aimed to limit the potential for disruption to the proceeding had petitioner been seated next to Grady. Petitioner expressed concern about properly phrasing questions during the trial and requested assistance from a legal advisor for that purpose. Tr. 4/30/03 at 20. The court's concern that petitioner would whisper back and forth how to phrase "each and every question" if

12

he was seated beside Grady was legitimate. The court's decision to have Grady seated at the front row of the gallery rather than beside petitioner after petitioner and Grady failed to heed the court's warning not to disrupt the proceedings was a proper exercise of discretion and not a violation of petitioner's constitutional rights. Therefore, the state court's decision denying petitioner's claim regarding his right to counsel was not contrary to or an unreasonable application of Federal law.

### B. Other Claims.

Petitioner alleges that the jury should have been charged that it had to find a common scheme or plan before it could aggregate the amounts stolen to establish the value element of third-degree grand larceny and third-degree welfare fraud. Pet'r Appellate Br. at 43-44. However, petitioner failed to properly raise this claim in state court. Therefore, the Appellate Division held that petitioner's argument regarding the aggregation claim was not preserved for appellate review citing to New York C.P.L. § 470.05[2]. Pettus, 803 N.Y.S.2d at 188.

It is well established that New York C.P.L. § 470.05[2] is an adequate and independent state procedural rule. Garcia v. Lewis, 188 F.3d 71, 79 (2d Cir. 1999); Peterson v. Scully, 896 F.2d 661, 663 (2d Cir. 1990). The court's statement that petitioner's aggregation claim was unpreserved decided the claim on an adequate and independent state law ground. Accordingly, petitioner's aggregation claim is procedurally barred from habeas review.

A petitioner may overcome a procedural bar by (1) showing both good cause for the procedural default and prejudice therefrom, or (2) demonstrating that the failure to consider the federal claim will result in a fundamental miscarriage of justice, specifically the conviction of an actually innocent person. See Bousley v. United States, 523 U.S. 614, 622 (1998); Grey v.

13

Hoke, 933 F.2d 117, 121 (2d Cir. 1991). Petitioner does not demonstrate cause and prejudice, nor does he demonstrate that failure to consider the federal claim will result in a fundamental miscarriage of justice. Therefore, this Court will not review this claim on the merits.

Petitioner also argues that the court could not impose consecutive sentences for the false instrument counts. Pet'r Appellate Br. at 51. He further alleges that the court could not sentence him on the fourth degree grand larceny and welfare fraud counts since those counts were the lesser included counts of the respective third degree counts, and because the jury did not reach a verdict on those counts. Id. at 58. The Appellate Division granted petitioner relief on these two claims. People v. Pettus, 803 N.Y.S.2d at 188 (modifying sentences to run concurrently and noting that petitioner should not have been sentenced on charges of grand larceny in the fourth degree or welfare fraud in the fourth degree). As petitioner already obtained relief on these claims, these claims are moot.

## CONCLUSION

Accordingly, petitioner's application for a writ of habeas corpus is denied. Because

petitioner has not made a substantial showing of the denial of any constitutional right, no

certificate of appealability shall issue. 28 U.S.C. § 2253; see Lozada v. United States, 107 F.3d

1011, 1017 (2d Cir. 1997), abrogated on other grounds, United States v. Perez, 129 F.3d 255,

259-60 (2d Cir. 1997) (discussing the standard for issuing a certificate of appealability); see also

Ludicore v. New York State Div. of Parole, 209 F.3d 107, 112-13 (2d Cir. 2000), cert. denied,

531 U.S. 873, 121 S. Ct. 175 (Mem), 148 L. Ed. 2d 120 (2000). The Clerk of Court shall enter

judgment and close this case.[5]

SO ORDERED:

/S/

_____
LOIS BLOOM
United States Magistrate Judge

Dated: August 8, 2007
      Brooklyn, New York

---

[5] Any requests that have not been acted upon shall be terminated in light of this Opinion
and Order.

15